NO. 07-10-0192-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JANUARY 27, 2011

_____

OLIVIA REYES TIENDA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-422,182; HONORABLE CECIL PURYEAR, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

This is an accelerated appeal[1] wherein Appellant, Olivia Reyes Tienda, requests this Court to review the trial court's order denying bail pending the appeal of her

---

[1]An appeal of any judgment or order pertaining to an Appellant's right to bond pending appeal "shall be given preference by the appellate court." Tex. Code Crim. Proc. Ann. article 44.04(g) (West 2006). For convenience, provisions of the Texas Code of Criminal Procedure will hereafter be cited as "article ____" or "art. ____."

conviction for credit card abuse, a state jail felony offense.[2]  In the underlying proceeding, Appellant was sentenced to two years confinement.  By her sole issue, she asserts the trial court abused its discretion in denying her an appeal bond because the State failed in its burden to show good cause that she is likely to commit another offense while on bail.[3]

## Standard of Review

We review a trial court's decision to deny an appeal bond under an abuse of discretion standard; *Ex parte Spaulding*, 612 S.W.2d 509, 511 (Tex.Crim.App. 1981), and ask whether the trial judge's "decision was made without reference to any guiding rules or principles or, in other words, if the decision was arbitrary or unreasonable." *Davis v. State*, 71 S.W.3d 844, 845-46 (Tex.App.--Texarkana 2002, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990)).  So long as the trial court's decision falls within the "zone of reasonable disagreement," we must uphold the trial court's decision even if we would have reached a different result.  *Id.* at 845.

## Appeal Bond

There is no federal or state constitutional right to bail pending appeal.  *Dallas v. State,* 983 S.W.2d 276, 278 n.1 (Tex.Crim.App. 1998).  *See Ex parte Cole*, 43 S.W.3d 713, 716 (Tex.App.--Fort Worth 2001, no pet.) (citing *Ex parte Lowe,* 573 S.W.2d 245, 247 (Tex.Crim.App. [Panel Op.] 1978)).  In Texas, a defendant's right to bail pending

---

[2]*See* Cause No. 07-10-0257-CR, *Olivia Reyes Tienda v. State,* presently pending before this Court.

[3]*See* art. 44.04(c) (West 2006); *Ex parte Castaneda*, 739 S.W.2d 456, 457 (Tex.App.--Corpus Christi 1987, no pet.).

appeal is governed by the provisions of articles 44.04 and Chapter 17 of the Texas Code of Criminal Procedure. *See Dallas,* 983 S.W.2d at 278 (citing *Ex parte Davila*, 623 S.W.2d 408, 410 (Tex.Crim.App. 1981)) (holding that the Chapter 17 procedures concerning bail are modified and supplemented by article 44.04 after an accused has been convicted and post-verdict proceedings are initiated).

Generally, a defendant convicted of a felony offense may be eligible for release on a reasonable appeal bond unless there exists good cause to believe that he or she will not appear when his or her conviction becomes final or is likely to commit another offense while on bond. *See* art. 44.04; *Compian v. State*, 7 S.W.3d 199, 200 (Tex.App. --Houston [14th Dist.] 1999, no pet.) (citing *Mayo v. State*, 611 S.W.2d 442, 444 (Tex.Crim.App. 1981)).[4] Here, following a hearing, the trial court denied an appeal bond based on its finding that Appellant was likely to re-offend in the event she was released from jail.

At the hearing, the State produced evidence that Appellant was under investigation by the 286th Judicial District Attorney's Office in 2006 for exploiting an elderly couple through forgery and theft. The investigation was prompted by bank employees who observed Appellant accompanying an elderly couple to the bank during a loan application review and while cashing checks written on the elderly couple's

---

[4]When a court sets bail, certain factors should be considered in reviewing whether the bail is reasonable such as length of the sentence, nature of the offense, work record, family ties, length of residence and ability to make bail. *See Swinnea v. State,* 614 S.W.2d 453, 455 (Tex.Crim.App. 1981); *Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex.Crim.App. 1981). However, when a court denies bail, the decision is based upon whether the record shows that the defendant is likely to commit another offense while on bail or would not appear when his conviction became final. Art. 44.04(c); *Shugart v. State*, 994 S.W.2d 367, 369 (Tex.Crim.App. 1999).

accounts.[5]   When the bank employees checked one account, they discovered that thirty-eight thousand dollars had been withdrawn during the four months the couple had been observed with Appellant, leaving a balance of less than a hundred dollars.  When bank employees attempted to separate Appellant from the elderly couple in order to speak with them privately, Appellant became uncooperative and belligerent.  Shortly thereafter, they closed their account with the bank.[6]   When the investigator confronted Appellant, she admitted that the couple had agreed to pay her one hundred twenty-five dollars a week to clean their house but had given her thousands of dollars to pay her bills and make her car payments.  Appellant was ultimately charged with altering a check made out by the couple to her from fifty dollars to one hundred fifty dollars.  The couple agreed that the check had been altered and a grocery employee positively identified Appellant as the person who cashed the altered check.  Ultimately, however, the District Attorney's Office did not pursue criminal charges against Appellant because the couple was unable to testify due to an onset of dementia.

More recently, while incarcerated, Appellant made a telephone call to her daughters wherein she asked one daughter to go to an elderly woman's house on the pretext of taking her garbage out and described how she could obtain money by

---

[5]The couple was in their eighties and the woman had recently suffered a stroke.  Her memory and mental state were not clear.

[6]The investigative report indicated that, prior to moving their money to this bank, the couple had moved their money from another bank when bank employees confronted them with their suspicions that Appellant was exploiting them.  The bank employees at the prior bank also became suspicious when they observed Appellant cashing multiple checks written by the couple on their account.

deceiving the elderly woman.[7] She proposed a variety of lies her daughter should use to obtain money from the woman. Based upon the past investigation and this new information, Kevin Davis, Hockley County Sheriff, and Brandy Montgomery, a bank employee, opined that, if Appellant made bond, she would absolutely, or very likely, commit another crime.

Given the findings of the elderly-exploitation investigation in 2006 and her recent telephone call from jail encouraging her daughter to obtain money from an elderly person by false pretext or deception,[8] we cannot say that the trial court's decision to deny an appeal bond was "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Shugart,* 994 S.W.2d at 369 (quoting *Heiselbetz v. State*, 906 S.W.2d 500, 517 (Tex.Crim.App. 1995)). This is particularly so as the investigation report and recent phone call from jail suggest a continuous pattern of such behavior undeterred by her present incarceration. Accordingly, Appellant's sole issue is overruled.

## Conclusion

The trial court's order denying bail is affirmed.

Patrick A. Pirtle
Justice

Do not publish.

---

[7]Appellant and her daughter had been cleaning the woman's house for several years. Appellant's husband testified the woman was making payments to them for Appellant's medications.

[8]*See* Tex. Penal Code Ann. §§ 31.02, 31.03 (West Supp. 2010); *Miller v. State*, 164 Tex. Crim. 628, 301 S.W.2d 672, 672-73 (1957).